UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA



| | | |
|---|---|---|
| DONALD MILLER, JR. | § § § § | |
| PLAINTIFF | § § § | CASE NO. |
| JOHN ZINK COMPANY, LLC | § § § § | 09 CV - 401 GKF   PJC |
| DEFENDANT | § | |

### ORIGINAL COMPLAINT – JURY TRIAL DEMANDED

Comes now the plaintiff Donald Miller, Jr. ("Miller") complaining of the defendant John Zink Company, LLC ("John Zink") and for his cause of action alleges:

### JURISDICTION AND VENUE

1. Miller is a former employee of John Zink and brings this action pursuant to 29 U.S.C. § 215(a)(3) seeking to recover lost wages, liquidated damages, compensatory damages, punitive damages and attorneys' fees and costs under the provision of the Fair Labor Standards Act of 1938 as amended (the "FLSA").

2. Jurisdiction of this action is conferred on this Court by §15(a) of the FLSA (29 U.S.C.A. Section 215(a)) and 28 U.S.C. § 1131 which grants the federal district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3. Miller was employed by John Zink in the city of Tulsa within Tulsa County and resides in Tulsa County, State of Oklahoma.

4. . John Zink is a foreign limited liability company existing under the laws of



the State of Oklahoma with its principal offices and place of business in the city of Tulsa, Oklahoma. John Zink operates a manufacturing and distribution facility in Tulsa.

5. At all relevant times John Zink was engaged in the business which regularly employed vehicles, equipment, goods and supplies that were manufactured outside of Oklahoma and which were transported to Oklahoma. The company had gross sales exceeding $500,000.00 per annum and handled or caused to be handled on its behalf goods and materials that had moved in interstate commerce.

## FACTUAL BACKGROUND

6. Miller was employed by John Zink as a Subcontracts Coordinator II commencing on October 20, 2008. Miller was paid on at an hourly rate and was expressly recognized to be entitled to be paid overtime premiums for hours worked in excess of forty (40) in a work week. Miller was thus declared to be non exempt for the purpose of the FLSA by John Zink.

7. Miller was assigned to oversee the progress of John Zink projects being manufactured at numerous subcontractors' facilities across various states. One such subcontractor was Smith's Machine located in the city of New Haven in the state of Mississippi. Following Miller's initial out of state business trip and receiving his paycheck itemization Miller noticed that he was not paid for all of his travel time spent travelling to and from the out of state contractor.

8. Miller brought the issue of non payment for travel time to the attention of his immediate supervisor Andy Fatone. Fatone provided to Miller a written John Zink policy which stated that John Zink did not pay non exempt employees for all time spent travelling on overnight business trips.

9. Later Miller contacted the John Zink Human Resources department regarding the issue. Miller requested clarification on the pay issue but specifically requested that his name not be mentioned as he did not want to 'create waves' or be subject to any type of retaliation. Subsequently Miller was contacted by John Zink's Director of Human Resources Debbie Cowan. Miller was told by Cowan that she had discovered numerous inconsistencies in John Zink's travel policy. Cowan further related that she was having a meeting with upper management of John Zink's parent company in Wichita regarding the issue. Miller once again requested that Human Resources "keep his name out of it" and was assured that it would.

10. In early February of 2009 Miller received a text from his direct supervisor Fatone to meet with Gene Mason of John Zink Human Resources regarding the issue of John Zink's travel policy. During this meeting Mason informed Miller that he should have been paid for the travel time at issue and that John Zink wanted to compensate him for all unpaid time incurred on the Mississippi business trip. Miller was later told that his concerns led to an entire overhaul of payment practices for overnight travel time for not only John Zink but all of its affiliated companies.

11. The very next week Fatone informed Miller in a face to face meeting that all of Miller's out of town shops including Smith's Machine in New Haven, Mississippi and Wichita Steele in Wichita, Kansas that had been previously assigned to him for supervision were being reassigned to other subcontractor supervisors. Shortly thereafter Miller had a meeting with Robert Dawkins, John Zink's Head of Purchasing and Sub-contracts in his office and was told that "we really encourage all of our employees to keep all problems within our department."

12. When he began employment with John Zink Miller was told he would need to obtain a passport to be able to travel out of country to supervise foreign sub contractors. After Miller complained about John Zink's policy for not paying for all travel time on over night business trips he was told by Fatone that there was no further need for him to obtain a passport as he would only be supervising local shops.

13. On April 2, 2009 Miller's employment was terminated in what was described as a reduction in force. John Zink terminated Miller even though he possessed a college degree and vastly more experience that another comparable employee who was retained. John Zink also retained a comparable contract employee.

14. Miller alleges that John Zink's failure to compensate him for travel time was a knowing violation of the FLSA. Miller seeks liquidated damages in an amount equal to his actual damages.

15. By reason of John Zink's actions in terminating his employment in retaliation for Miller engaging in protected activities in questioning John Zink's pay practices for hourly employees travelling overnight on company business it has been necessary for Miller to employ an attorney to prosecute this action. Miller is entitled to recover the reasonable value of their attorney's services.

### CAUSE OF ACTION – RETALIATORY DISCHARGE

16. Miller incorporates by reference paragraphs 1-15 as it set out fully herein.

17. The FLSA prohibits employers from discharging or in any other manner discriminating against any employee because such employee has filed any complaint . . . under or related to [the FLSA]. 29 U.S.C. § 215(a)(3). This section protects conduct based on a good faith, although unproven, belief that the employer's conduct is illegal,

and applies to the unofficial assertion of rights through inquires or complaints at work.

18. Shortly after joining John Zink's employment Miller inquired as to why he was not receiving proper compensation for overnight travel time. Miller's actions in initially protesting his failure to receive compensation for travel time and his bringing this issue to the attention of John Zink Human Resources were activities protected by the FLSA. Miller suffered several adverse employment actions committed by John Zink subsequent to his protected actions. Miller believes that each of these adverse employment actions was taken by John Zink personnel in unlawful retaliation for his correctly questioning John Zink's company policy on the payment of hourly employees travelling on overnight business trips.

19. Due to John Zink's actions in discharging Miller in retaliation for participating in clearly protected activities Miller has suffered damages including lost wages, lost employment benefits and emotional distress.

20. John Zink's actions in retaliating against him for engaging in protected activities were committed with malice and/or in reckless disregard for the legally protected rights of Miller and further justify the award of punitive damages by way of punishment.

## **PRAYER**

WHEREFORE, Miller prays for the following relief:

(1) Enter its order enjoining John Zink from engaging in future retaliatory conduct against its employees in violation of the FLSA;

(2) Enter its order requiring John Zink pay Miller such wages and benefits he would have received had he not been terminated;

(3) Grant Miller an award of liquidated damages;

(4) Award Miller a reasonable attorneys' fee and all costs of experts and other costs incurred in prosecuting this action;

(5) Grant Miller an award of compensatory damages including emotional distress;

(6) Grant Miller an award of punitive damages in an amount to be determined by the jury;

(7) Enter its Order reinstating Miller to his former position and/or in lieu of reinstatement grant him an award of front pay in an amount to be determined by the Court and/or jury; and

(8) Grant all further relief this Court deems just and equitable.

Dated this the 24th day June of 2009.

Respectfully submitted,

J. Vince Hightower
OBA Number 10333
1209 Idyllwild
Broken Arrow, Oklahoma, 74011
(918) 451 1121 or 592 8800
(918) 451 1477 fax

Attorney for the Donald Miller, Jr.